IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
GALVESTON DIVISION

| | | |
|---|---|---|
| RICHARD WILLIAMS, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. G-05-CV-630 |
| | § | |
| MICHAEL J. ASTRUE,[1] | § | |
| COMMISSIONER OF THE SOCIAL | § | |
| SECURITY ADMINISTRATION, | § | |
| | § | |
| Defendant. | § | |

## ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

This suit arises out of Plaintiff's claims that his employer, the Social Security Administration ("SSA") discriminated against on the basis of age and sex when it failed to promote him. Defendant has moved for Summary Judgment. For the reasons articulated below, Defendant's Motion is **GRANTED** and Plaintiff's claims against the SSA are **DISMISSED WITH PREJUDICE**.[2]

**I. Preliminary Background**

Plaintiff, a claims representative in the SSA Field Office in Galveston, Texas began his employment with the SSA in 1975. In 2002, Plaintiff applied for a promotion. He sought a position as a Social Insurance Specialist-Technical Expert in the same office. Patsy Lewis, the District Manager of the Galveston SSA Field Office, selected a different applicant, Kristen

---

[1] Michael J. Astrue became the Commissioner of the Social Security Administration in February, 2007. Accordingly, the Court **ORDERS** that he be substituted for Defendant Jo Anne Barnhart.
[2] The Court does not consider this Order worthy of publication. Accordingly, it has not requested and does not authorize publication.

Roberts, for the position. At the time of the selection, Plaintiff was a 54-year-old male, while Roberts was a 37-year-old female.

Plaintiff filed a complaint with the EEOC and alleged that he was not selected for the position based on his age and sex. The SSA conducted an investigation and advised Plaintiff that he should pursue any possible remedies in the Courts. Plaintiff then filed this claim on December 20, 2005.

## II. Legal Standard

### A. Summary Judgment Standard

Summary judgment is appropriate if no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(c); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S. Ct. 2548, 2552-53, 91 L. Ed. 2d 265 (1986). The party moving for summary judgment bears the initial burden of "informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." *Celotex*, 477 U.S. at 323, 106 S. Ct. at 2553. The non-moving party must come forward with "specific facts showing there is a genuine issue for trial." Fed. R. Civ. P. 56(e); *see also Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87, 106 S. Ct. 1348, 1356, 89 L. Ed. 2d 538 (1986). "'If the movant bears the burden of proof on an issue . . . [it] must establish beyond peradventure all of the essential elements' of the claim or defense." *Chaplin v. NationsCredit Corp.*, 307 F.3d 368, 372 (5th Cir. 2002) (citing *Fontenot v. Upjohn Co.*, 780 F.2d 1190, 1194 (5th Cir. 1986)). The Court must view all evidence in the light most favorable to the non-movant. *See e.g.*, *Broussard v. Parish of Orleans*, 318 F.3d 644, 650 (5th Cir. 2003). If the evidence would permit a reasonable fact finder to find in favor of the non-moving party, summary judgment should not be

granted.  *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48, 106 S. Ct. 2505, 2510, 91 L. Ed. 2d 202 (1986).

### B.  Discrimination Standard

Plaintiff's discrimination claims are governed by the burden-shifting framework initially set out by the Supreme Court in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S. Ct. 1817, 36 L. Ed. 2d 668 (1973).  *See Roberson v. Alltel Info. Serv.*, 373 F.3d 647 (5th Cir. 2004).[3] To succeed on his claim, Plaintiff must first establish a *prima facie* case of unlawful discrimination.  *Id.*  If Plaintiff proves his *prima facie* case, he is entitled to a presumption of discrimination.  The burden then shifts to Defendant to articulate a legitimate, non-discriminatory reason for its failure to promote Plaintiff.  If Defendant is able to offer such, Plaintiff must then offer sufficient evidence to create a genuine issue of material fact that Defendant's proffered reasons are pretextual.  *See Shackelford v. Deloitte & Touche, LLP*, 190 F.3d 398, 404 (5th Cir. 1999).

In order to make a *prima facie* case under the Age Discrimination in Employment Act ("ADEA"), Plaintiff must show that "(1) he was in the protected class; (2) he was qualified for the position sought; (3) he was not selected; and (4) he was either (a) replaced by another person outside of the protected class; (b) replaced by someone younger; or (c) otherwise not selected because of age."  *McClaren v. Morrison Mgmt. Specialists, Inc.*, 420 F.3d 457, 462 (5th Cir. 2005); *see O'Connor v. Consol. Coin Caterers Corp.*, 517 U.S. 308, 312, 116 S. Ct. 1307, 1310, 134 L. Ed. 2d 433 (1996) (holding that there can still be an ADEA claim if the younger, successful applicant was also a member of the protected class).  In order to make a *prima facie*

---

[3] Plaintiff's briefing mentions the modified *McDonnell Douglas* approach applicable to mixed-motive cases, but does not argue or indicate that he is in fact alleging a mixed motive.  Since Plaintiff does not argue it, and the Record does not seem to support it, the Court finds that the mixed-motive approach does not apply in this case, and it is properly analyzed under *McDonnel Douglas*.

case of sex discrimination, Plaintiff must show that he: (1) belongs to a protected class; (2) was qualified for the position sought; (3) suffered adverse employment action; and (4) was replaced by someone outside his protected class. *See Manning v. Chevron Chem. Co., LLC*, 332 F.3d 874, 881 (5th Cir. 2003) (citing *Price v. Fed. Express Corp.*, 283 F.3d 715, 720 (5th Cir. 2002)).

## III. Analysis

### A. *Prima Facie* Case

The Parties agree that Plaintiff has made out a *prima facie* case of age and gender discrimination.

### B. Legitimate Non-Discriminatory Reason

The burden now shifts to Defendant to articulate a legitimate, non-discriminatory reason for its actions. In this case, Defendant has met its burden of production.

The Vacancy Announcement describing the Technical Expert position Plaintiff applied for included the following language:

> Serves as technical expert responsible for the most complex, non-routine Title II and/or Title XVI cases. Performs a wide range of difficult and complex adjudicative functions through face-to-face contacts with members of the general public representing all socio-economic levels and occupations. Provides expert advice, information, and consultative services involving interpretation of major provisions of the Social Security Act within the District Office. Provides a lead role in technical training and mentoring other employees in interpretation of new legislation, regulations, policies, and procedures. Informs the claimant and/or his representative of his rights and obligations under the Social Security Program. Explains the concepts and benefits of the social insurance system and its relationship to social welfare and benefits program.

Def.'s Mot. for Summ. J. 5. Defendant claims that Roberts was chosen over Plaintiff because she was more qualified than Plaintiff. Ms. Lewis, the hiring official, determined that both

Roberts and Plaintiff possessed sound technical knowledge of the Title II disability insurance program but concluded that Roberts had superior recent training experience. According to Ms. Lewis, Plaintiff last provided training in 1997, and he told Ms. Lewis that he did not like training others. Plaintiff did not indicate any recent training experience on his application. Roberts was apparently known for her training skills and had recently provided essential training in and out of the District Office in both formal and informal settings. Roberts heavily emphasized her training on her application. These differences were also noted by Mr. Eldridge and Ms. Harper, two senior SSA supervisors who consulted with Ms. Lewis during the selection process.

Additionally, Ms. Lewis determined that Roberts had superior claims processing skills. Roberts was more productive than Plaintiff, even though she was engaged in additional training and mentoring. Ms. Lewis considered efficiency in production an essential characteristic for the position since it involved a substantial increase in additional responsibilities.

Defendant's claim that it hired Roberts over Plaintiff because of her superior training and claims processing experience is sufficient to meet its burden of production. *See Price*, 283 F.3d at 720 (finding that hiring an individual because of his superior qualifications is a legitimate non-discriminatory motive).

**C. Pretext**

Since Defendant has offered a legitimate non-discriminatory reason for its selection of Roberts over Plaintiff, it is now Plaintiff's burden to show that a reasonable fact-finder could find that Defendant's articulated reasons are mere pretext and that Defendant's choice was the result of improper discriminatory considerations. *See Shackelford*, 190 F.3d at 404. Plaintiff offers thirteen points in support of his argument that Defendant's proffered reasons are pretextual. Having considered all thirteen, the Court finds that all of Plaintiff's reasons fall into

one of three categories—(1) facts which tend to support an argument that Plaintiff was in fact more qualified than Roberts, (2) facts which tend to show irregularities in the hiring process, and (3) facts which are irrelevant to Plaintiff's claim of pretext. The Court will consider each category in turn.

### 1. Superior Qualifications

A Plaintiff can defeat summary judgment by offering evidence that he was "clearly better qualified" than the candidate ultimately chosen. *See Manning*, 332 F.3d at 882; *see also Celestine v. Petroleos de Venezuela SA*, 266 F.3d 343, 356-57 (5th Cir. 2001). "However, the bar is set high for this kind of evidence because differences in qualifications are generally not probative evidence of discrimination unless those disparities are 'of such weight and significance that no reasonable person, in the exercise of impartial judgment, could have chosen the candidate selected over the plaintiff for the job in question.'" *Celestine*, 266 F.3d at 357 (quoting *Deines v. Tex. Dep't. of Prot. & Regulatory Servs.*, 164 F.3d 277, 280-81 (5th Cir. 1999)).

In support of his argument that he was better qualified than Roberts, Plaintiff points out that (1) he is a long-term SSA employee with a documented history of achievement, (2) he first became eligible for a GS-12 position in 1982[4], (3) he obtained a GS-11 level in 1993, before any other applicant, (4) Roberts did not obtain a GS-11 position until 1999, and (5) Plaintiff was rated higher than Roberts on the well-qualified list.[5]

Reasons 1, 2, 3, and 4 essentially show that Plaintiff had longer tenure with the SSA, a fact that is undisputed by Defendant. The Fifth Circuit has repeatedly stated that "an attempt to

---

[4] Pay for civilian government employees is determined by the GS pay scale, with higher numbered levels offering higher pay. Employees must meet certain qualifications to be eligible for certain pay levels. Plaintiff's original position was a GS-11. The position he sought was a GS-12.
[5] When a position becomes available in the SSA, an assessment panel applies a standard scoring system to all applications. Based on those scored, the panel compiles a "well-qualified list." The hiring official can chose anyone from the "well-qualified list."

equate years served with qualifications . . . is unpersuasive." *Nichols v. Lewis Grocer*, 138 F.3d 563, 568-69 (5th Cir. 1998) (quoting *Nichols v. Loral Vought Sys. Corp.*, 81 F.3d 38, 42 (5th Cir. 1996); *see also Bodenheimer v. PPG Indus., Inc.*, 5 F.3d 955, 959 (5th Cir. 1993). It is even less persuasive here since the SSA has indicated why Roberts's recent experience as a trainer was more relevant for the specific position sought than Plaintiff's longer tenure.

Plaintiff cites his documented history of achievement as additional evidence that he was more qualified than Roberts. Defendant does not dispute that Plaintiff received favorable evaluations and performance awards during his tenure at the SSA. However, Roberts also received favorable evaluations and performance awards during her tenure. This evidence establishes that he was a qualified employee. It does not establish that he was clearly more qualified than Roberts.

Plaintiff's final evidence in this category is the score he was awarded by the pre-screening assessment panel. Plaintiff received 100 out of 100 points while Roberts received only 80 points. The assessment panel score is the SSA's preliminary method for separating qualified applicants from unqualified ones. The score is not a method for ranking the applicants in all respects relevant to the position. *See Jones v. Barnhart*, 39 F.3d 1260, 1264 (10th Cir. 2003). It was entirely appropriate for Ms. Lewis to look beyond the score awarded by the assessment panel in choosing the most qualified candidate. Plaintiff's higher score is evidence that he had certain advantages over Roberts. It does not persuade the Court that he was clearly more qualified than Roberts.

Having considered Plaintiff's argument that he was better qualified for the position than Roberts, the Court finds it unpersuasive. Plaintiff cannot meet his high burden of showing that

"no reasonable person, in the exercise of impartial judgment, could have chosen [Roberts] over the plaintiff for the job in question.'"  *Celestine*, 266 F.3d at 357.

### 2.  Irregular Hiring Process

Plaintiff also alleges that the process used to promote Roberts was irregular.  Specifically, he alleges that the position was originally not posted by Ms. Lewis, who selected Roberts through an essay process within the Galveston Office.  After this, Ms. Lewis learned that she must post the position in accordance with SSA policy.  After posting the position, Ms. Lewis received applicants from six candidates who made the "well-qualified list."  Ms. Lewis limited her consideration to the two candidates who were already in the Galveston Field Office, Roberts and Plaintiff.  Plaintiff argues that her exclusion of the other candidates was improper and that these irregularities, taken together, indicate that Defendant's proffered reasons for choosing Roberts are pretext.

The Court agrees that Ms. Lewis did not originally post the vacancy as she should have.  However, this initial mistake was completely remedied by her subsequent posting and selection.  Additionally, it is not probative of whether Defendant's proffered reason for promoting Roberts is pretextual.  A promotion can be unfair or even improper without being discriminatory.  *See Moore v. Eli Lilly & Co.*, 990F.2d 812, 819 (5th Cir. 1993).  This alleged irregularity is insufficient to show pretext.

Likewise, the Court finds that limiting the candidate field to those employees already located in Galveston may have been inappropriate, but it was not detrimental to Plaintiff and does not point to pretext.  Defendant did not defend its decision to limit the candidate pool, but in any event, Plaintiff was one of the candidates considered.  Accordingly, it would be irrational to conclude that the geographic limitation was an attempt to discriminate against Plaintiff.  The

Court does not have enough evidence to determine whether this limitation was improper, but it can and does conclude that it is not evidence sufficient to show pretext.

## IV. Conclusion

Since none of Plaintiff's evidence sufficiently meets its burden of showing pretext, the Court must dismiss his claims against Defendant. Accordingly, Plaintiff's claims against Defendant are **DISMISSED WITH PREJUDICE**. A Final Judgment will be signed contemporaneously with this Order.

**IT IS SO ORDERED.**

**DONE** this 6th day of July, 2007 at Galveston, Texas.

_____
Samuel B. Kent
United States District Judge